UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID L. FISH, JR.,

    Plaintiff,

  v.

MARINE BIOLOGICAL LABORATORY,

    Defendant.

Civ. A. No. 05-11619-RGS

## DEFENDANT MARINE BIOLOGICAL LABORATORY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Fed. R. Civ. P. 12(c), Defendant Marine Biological Laboratory (the "MBL") moves this Court to dismiss all claims contained in Plaintiff David L. Fish, Jr.'s ("Plaintiff") Complaint.

**I. BACKGROUND**

  A. <u>Summary of the Allegations.</u>[1]

The MBL, a non-profit institution, has employed Plaintiff as a Watchperson since June 19, 1988. Complaint ¶¶ 1, 2. On January 25, 2004, Plaintiff complained to the MBL's Equal Employment Opportunity Coordinator Jane MacNeil regarding a pay disparity between the MBL's Watchperson positions, currently all held by male employees, and the MBL's Front Office Assistant positions, currently all held by female employees. Complaint ¶ 4. For pay purposes, the Watchperson position is a "Grade 6" position and the Front Office Assistant position is a "Grade 7" position. Complaint ¶ 4. The respective grades and pay were agreed upon between Plaintiff's union, Hospital Workers Local 2020, affiliated with Service Employees

---

[1] The MBL recognizes that Plaintiff's factual allegations must be taken as true for purposes of this Motion.

International Union (the "Union"), and the MBL.[2]  See Exhibit 1 to Defendant's Answer, a copy of the collective bargaining agreement ("CBA").  Plaintiff, as a member of the Union's bargaining committee, is a signatory to the CBA and, as such, was responsible for the differentials in pay on which he now bases his claims.  See Exhibit 1 to Defendant's Answer, p. 23.  Plaintiff complained to Ms. MacNeil that the work performed by the Watchpersons and the Front Office Assistants is different because Mary Beckwith has denied the Watchpersons the same training that the Front Office Assistants have received and the opportunity to assume the responsibilities of the Front Office Assistants.  Complaint ¶ 5.  In response to Plaintiff's Complaint, on February 10, 2004, Ms. MacNeil sent Plaintiff a letter informing him that the basis for the difference in pay received by Watchpersons and Front Office Assistants was due to the difference in work assignments, level of effort and responsibilities required by each position.  Complaint ¶ 6.  Although Plaintiff disagrees with Ms. MacNeil's assessment, *in his Complaint he admits that the Watchpersons do not perform daily audits or data entry and do not run reports, which are duties of the Front Office Assistants - - thereby admitting that the two positions are inherently different in work assignments and responsibilities*.  Complaint ¶ 6.  Plaintiff further alleges that, after making his complaint to Ms. MacNeil, he was retaliated against because he experienced a reduction in overtime hours assigned by Ms. Beckwith, who plaintiff claims gave more overtime hours to the Front Office Assistants whom she supervises.  Complaint ¶ 7.

Plaintiff previously filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "Commission") against the MBL on January 4, 2004.  Complaint

---

[2] This Court may consider the CBA whose contract provisions are referred to in Plaintiff's Complaint.  See Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005) (augmenting well-pleaded facts with facts extractable from documentation incorporated by reference in plaintiff's complaint for purposes of reviewing dismissal for failure to state a claim upon which relief can be granted); Boston Scientific Corp. v. Schneider (Europe) AG, 983 F. Supp. 245, 253 n. 10 (D. Mass. 1997) (considering agreement that was referenced in plaintiff's complaint in determining motion to dismiss).

¶ 8. After investigating Plaintiff's Charge, the Commission dismissed Plaintiff's complaint of discrimination. Complaint ¶ 9. Plaintiff now brings suit against the MBL, alleging violations of the Equal Pay Act of 1963, Title VII of the Civil Rights Act of 1964 and "the applicable laws of the Commonwealth of Massachusetts." Complaint ¶ 10.

## II. ARGUMENT

### A. Standard of Review.

"The standard for evaluating a motion for judgment on the pleadings is 'essentially the same as the standard for evaluating a Rule 12(b)(6) motion.'" Petricca v. City of Gardner, 194 F. Supp. 2d 1, 4 (D. Mass. 2002) (internal citation omitted). The Court "must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Id. A Rule 12(c) motion will be granted if "it appears, beyond doubt, that the plaintiff can prove no facts in support of his claim that entitles him to relief." Id. For the reasons stated herein, all counts against the MBL must be dismissed.

### B. Plaintiff Can Prove No Facts to Support Any of His Claims of Discrimination.

Plaintiff's Complaint is insufficient to establish discrimination based upon compensation differentials under either the Federal Equal Pay Act (the "FEPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), Massachusetts General Laws Chapter 151B ("Chapter 151B") or the Massachusetts Equal Pay Act ("MEPA").

#### 1. Plaintiff Cannot Establish A Prima Facie Case of Discrimination.

The FEPA prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); see also Gu v. Boston Police Dep't, 312 F.3d 6, 15 (1st Cir. 2002). To establish a prima facie case under the FEPA, a plaintiff must establish that the employer paid different wages to a member of the

3

opposite sex for substantially equal work. See Gu, 312 F.3d at 15 (citing Rodriguez v. Smithkline Beecham, 224 F.3d 1, 6 (1st Cir. 2000)). Based on Plaintiff's Complaint, he can prove no facts to support a claim under FEPA because he has *admitted* that there are *differences between the work performed by Watchpersons and the Front Office Assistants, such as the daily audits, data entry and reports that the Front Office Assistants perform, which are not duties of the Watchpersons.* Complaint ¶¶ 5-6; see also Gu, 312 F.3d at 16 (finding plaintiff cannot establish that employees with different job responsibilities and duties performed "substantially similar work" as required by the FEPA); Rodriguez, 224 F.3d at 7 (affirming finding that a female employee failed to establish a prima facie case of sex discrimination based on unequal compensation where her job functions and responsibilities were not substantially similar or comparable to higher paid male employees). Even where there is overlap between the duties of two positions, that will not establish substantially similar work. See Rodriguez, 224 F.3d at 6. Under both the FEPA and MEPA, where there are differences in job responsibilities, a plaintiff cannot establish "substantially similar work" as required by the FEPA or "comparable work" as required by MEPA. See Gu, 312 F.3d at 9. It follows that Plaintiff cannot show discrimination under Title VII and 151B either, since by Plaintiff's own admission he is not similarly situated in <u>all</u> relevant aspects to the Front Office Assistants with whom he compares himself. See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129 (1994).

    2.    The Terms of the CBA Provide an Affirmative Defense to Plaintiff's Discrimination Claims.

Even if Plaintiff could establish a prima facie case under any of the discrimination statutes, his claim would still fail because any discrepancy in the pay of Watchpersons and Front Office Assistants is the result of the pay grade system set forth in the CBA which he and the Union agreed upon, and which is a pay system based on a "differential other than sex." 29

4

U.S.C. § 206(d)(1); See also Gu, 312 F.3d at 15 ("[t]o rebut the prima facie case, an employer has several affirmative defenses under the FEPA, including that the discrepancy resulted from a pay system based on (1) seniority; (2) merit; (3) quantity or quality of production; or (4) *another differential based on a factor other than sex*") (emphasis added). Likewise, Title VII incorporates the affirmative defenses of the FEPA, including a "differential based on a factor other than sex." 42 U.S.C. § 2000 e-2(h); Mullenix v. Forsyth Dental Infirmary for Children, 965 F. Supp. 120, 143 (D. Mass. 1996). Again, the CBA establishes the difference in pay grades between Watchpersons and Front Office Assistants. Moreover, Title VII and Chapter 151B require a showing of "intent" to discriminate. See Mullenix, 965 F. Supp at 142-43; McMillan v. Mass. Soc. for the Prevention of Cruelty to Animals, 140 F.3d 288, 298 (1st Cir. 1998). As a signatory to the CBA he helped negotiate, Plaintiff is in the untenable position of alleging discrimination conceived by pay grades he agreed upon. Accordingly, the requisite showing of intent to discriminate cannot be established based on Plaintiff's own factual averments.

Similarly, Plaintiff's Title VII and Chapter 151B claims also must fail because he can prove no facts to support such claims, as he has admitted that the Watchperson and Front Office Assistant positions are different and are classified as different pay grades under the CBA. See Rodriquez, 224 F.3d at 8 (finding plaintiff failed to establish a prima facie case under Title VII because her job functions and responsibilities were not substantially similar or comparable to other male employees); McMillan, 140 F.3d at 298 (stating requirements of prima facie case under state and federal law are the same). Further, Plaintiff cannot state a claim for discriminatory training or assignment of work because, due to the differences between the Watchperson position and the Front Office Assistant position, which Plaintiff has admitted exist, individuals in these positions do not require the same training, nor receive the same assignments.

USIDOCS 5218157v3

C.  Plaintiff Can Prove No Facts to Support His Claim of Retaliation.

In order to establish a claim for retaliation, Plaintiff must demonstrate that (1) he engaged in protected conduct, (2) he suffered an adverse employment action and (3) a causal connection existed between the protected conduct and the adverse action. See Mullenix, 965 F. Supp. at 148. Plaintiff complains that the MBL retaliated against him by reducing the overtime hours he received from Ms. Beckwith, who he alleges gave more overtime hours to the Front Office Assistants she supervised. Complaint ¶ 7. Even if Plaintiff could establish that he experienced a reduction in overtime hours, the fact that the Watchpersons and Front Office Assistants perform different duties, which Plaintiff has admitted, requires that Watchpersons and Front Office Assistants work different amounts of overtime. Therefore, Plaintiff's claim of retaliation must fail.

D.  Plaintiff's State-law Claims are Preempted by Section 301 of the Labor-Management Relations Act.

Any state-law claims brought by Plaintiff depend on an analysis of the CBA between the MBL and the Union and, therefore, are preempted by Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. See Magerer v. John Sexton & Co., 912 F.2d 525, 528 (1st Cir. 1990) (stating Section 301 completely preempts a state-law claim "if the resolution of [the] state-law claim depends upon the meaning of a collective bargaining agreement"). As described above, the MBL's Front Office Assistants and Watchpersons are represented by the Union and work under the terms of an agreed upon CBA, to which the Plaintiff is a signatory. See Exhibit 1 to Defendant's Answer, p. 23. The CBA controls the terms and conditions of employment with the MBL, including Plaintiff's rate of pay. The CBA provides for Watchpersons to be paid at a Grade 6 pay level and Front Office Assistants to be paid at a Grade 7 pay level. More specifically, regarding pay grades, the CBA provides that "[a]ny worker who feels he/she is

graded incorrectly . . . may appeal to the grading committee and, should the grading committee agree to the upgrade, such change in grade shall be done retroactive to the date the worker appealed to the grading committee." See Exhibit 1 to Defendant's Answer, Article V, §2B. Plaintiff does not allege that he ever requested a review of the Watchperson pay grade by the Grading Committee as outlined in the CBA. Because any state-law claim raised by Plaintiff requires analysis of the CBA and because he has not exhausted the administrative remedies provided under the CBA, Plaintiff's claims are preempted by Section 301 of the Labor-Management Relations Act. See Quesnel v. Prudential Life Ins. Co., 66 F.3d 8, 10-11 (1st Cir. 1995) (finding claim of wrongful termination preempted and that plaintiff failed to exhaust his administrative remedies under the CBA where the CBA set forth the terms and scope of the employment relationship, including rates of pay, wages and conditions of employment).

### III.  CONCLUSION

For the foregoing reasons, the MBL, a non-profit organization, respectfully requests that this Court spare it the time and expense of litigating an unmeritorious case as evident on the face of the Complaint and grant its Motion for Judgment on the Pleadings and award it attorneys' fees and costs.

Respectfully submitted,

THE MARINE BIOLOGICAL LABORATORY,

By its attorneys,

_____
Jonathan D. Rosenfeld (BBO# 556172)
Julie Murphy Clinton (BBO# 655230)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: August 30, 2005

## CERTIFICATE OF SERVICE

I, Jonathan D. Rosenfeld, hereby certify that on August 30, 2005, I caused a copy of the foregoing Answer to be served by first-class mail upon the plaintiff, David L. Fish, Jr.

_____
Jonathan D. Rosenfeld